UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| HASSE CONSTRUCTION COMPANY, INC., an Illinois Corporation,<br>    Plaintiff,<br>    v.<br>GARY SANITARY DISTRICT BOARD OF COMMISSIONERS, an Executive Department of the City of Gary, an Indiana Municipal Corporation, and RUDY CLAY, as Special Administrator of the Gary Sanitary District,<br>    Defendants/Third-Party Plaintiffs,<br>    v.<br>ALAN WISEMAN, individually and d/b/a UNITED WATER, and WHITE RIVER ENVIRONMENTAL PARTNERSHIP,<br>    Third-Party Defendants. | CASE NO.: 2:06-CV-00322-PRC |

**OPINION AND ORDER**

This matter is before the Court on the White River Parties' Motion for Summary Judgment [DE 70], filed by Third-Party Defendants Alan Wiseman, United Water, and White River Environmental Partnership on October 3, 2008. For the following reasons, the Court hereby **GRANTS** the White River Parties' Motion for Summary Judgment.

**PROCEDURAL BACKGROUND**

On September 25, 2006, Plaintiff Hasse Construction Company, Inc. ("Hasse") filed its Complaint in this matter against Defendants/Third-Party Plaintiffs, Gary Sanitary District Board of Commissioners, an Executive Department of the City of Gary, an Indiana Municipal Corporation, and Rudolph Clay, as Special Administrator of the Gary Sanitary District (collectively, "GSD"),

alleging breach of contract and quantum meruit/unjust enrichment. Hasse's allegations concern a contract that Hasse entered into with the GSD to reconstruct and/or rehabilitate sewers in Gary, Indiana. Hasse alleges that GSD failed to disclose underground utility facilities, and that those facilities interfered with Hasse's work by slowing progress and increasing costs. In its Complaint, Hasse requests that the Court grant it relief in the form of increasing the contract price for its work commensurate with the cost of the additional work required due to the undisclosed utility facilities. Further, Hasse requests that the Court find that it substantially performed its contractual duties.

On December 12, 2006, GSD filed an Answer. On March 13, 2007, Hasse filed a Supplemental Complaint for Damages and Declaratory Relief, in which it updated its request for damages and requested additional monetary relief due to work performed since the filing of the original Complaint. On May 31, 2007, GSD filed an Answer to Supplemental Complaint for Damages and Declaratory Relief.

On July 6, 2007, GSD filed a Third-Party Complaint against Third-Party Defendants Alan Wiseman ("Wiseman"), individually and doing business as United Water, White River Environmental Partnership ("WREP") (collectively, "the Third-Party Defendants"), and Greeley and Hansen, LLC.[1] In the Third-Party Complaint, GSD alleges that it contracted with the Third-Party Defendants to prepare specifications, blueprints, drawings, and to solicit public bids for, and provide engineering services and oversight to contractors performing, sewer reconstruction and/or rehabilitation work in the City of Gary. Count I of the Third-Party Complaint alleges that the Third-Party Defendants were negligent in failing to properly oversee, inspect, and provide services to the GSD regarding the sewer work. Count II alleges that the Third-Party Defendants failed to provide

---

[1] Pursuant to the Court's August 22, 2008 Order, granting a Stipulation to Dismiss, Defendant Greeley and Hansen, LLC is no longer a party in this matter. Accordingly, this Order will only discuss the facts as they relate to the remaining Third-Party Defendants.

the services required under the respective consulting agreements and failed to meet their contractual obligations. GSD alleges that as a result of the acts and omissions of the Third-Party Defendants, GSD has been sued by Hasse and that the Third-Party Defendants are liable for any damages, costs, or attorneys fees awarded to Hasse.

On January 23, 2008, GSD filed an Amended Third-Party Complaint to correctly name the Third-Party Defendants.

On March 13, 2008, Wiseman and WREP filed an Answer to Amended Third-Party Complaint in which they responded to GSD's allegations and set forth certain affirmative defenses. The Affirmative Defenses section of the Answer asserts that GSD fails to state a claim for which relief may be granted and that GSD fails to identify any duty owed by Wiseman and WREP and fails to show any agreement between the parties.

On March 26, 2008, Greeley and Hansen, L.L.C. filed a Motion to Dismiss and Strike, seeking to dismiss Count I of the Amended Third-Party Complaint and to Strike Requests for Punitive Damages and Attorneys Fees. On April 2, 2008, Wiseman and WREP filed their Notice of Joinder, seeking to join the Motion to Dismiss and Strike.

On May 23, 2008, the Court entered an Order granting in part and denying in part the Motion to Dismiss and Strike. In particular, the Court granted Wiseman's and WREP's request to join in the Motion to Dismiss and the Court dismissed Count I (the negligence claim) of GSD's Amended Third-Party Complaint, with prejudice, against Greeley and Hansen, L.L.C. and the Third-Party Defendants.

On October 10, 2008, pursuant to a Joint Motion of Plaintiff and Defendants to Stay Proceedings Between These Parties Pending Arbitration, the Court stayed the proceedings solely between Hasse and GSD, pending the outcome of binding arbitration.

On October 3, 2008, the remaining Third-Party Defendants filed a Motion for Summary Judgment with an accompanying memorandum in support. On December 2, 2008, GSD filed its response brief in opposition to the Motion for Summary Judgment. The remaining Third-Party Defendants filed their reply brief on December 16, 2008. Because the parties failed to provide legal citations in support of the arguments presented in their briefs, the Court issued a *sua sponte* Order on December 22, 2008, ordering the parties to file amended briefs in support, in response, and in reply to summary judgment, including current legal authority. On January 8, 2009, the Third-Party Defendants filed their Amended Memorandum in Support of Motion for Summary Judgment and Amended Reply brief. GSD filed its Amended Response brief on January 30, 2009. Accordingly, this Order considers only the Amended briefs filed in this case.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

**FACTS**

On April 10, 1998, WREP and GSD executed an "Agreement for the Operation, Maintenance and Management of the Gary Sanitary District Wastewater Treatment and Collection System" ("the O&M contract"), pursuant to which responsibilities for day to day operation, maintenance, and management of the City's sewer system were assigned to WREP. Included in the terms of the O&M contract is section 7.05, which permits the parties to agree to allow for the providing of additional services not within the scope of the original O&M contract, by means of agreement upon an Additional Services Form. Other signatories to the O&M contract are "The Parent Companies," including United Water Services, Inc.

In March of 2003, WREP and GSD also executed an "Agreement Between Gary Sanitary District and White River Environmental Partnerhip (sic) for Project Management of the Large Diameter Sewer Cleaning Project 2005" ("the Sewer Cleaning Management Agreement"), pursuant to which WREP was retained to oversee the cleaning of, and examination of, the condition of GSD's sewer system by a third party contractor known as the National Power Rodding Company. The signatories to the Sewer Cleaning Management Agreement are GSD, WREP, and Wiseman. Wiseman signed the contract as "Designated Representative," pursuant to paragraph 6.02A of the Agreement. Third-Party Defs.' Mot. Summ. J. Ex. G. Paragraph 6.02 of the Sewer Cleaning Management Agreement is entitled "Authorized Project Representatives." *Id.* Paragraph 6.02A provides, in part, that "[c]ontemporaneous with the execution of this Agreement, [GSD] shall designate a specific individual to act as [GSD]'s representative with respect to the services to be performed or furnished by WREP and responsibilities of [GSD] under this Agreement." Additionally, the Sewer Cleaning Management Agreement includes a section entitled "WREP's Responsibilities," that sets out WREP's responsibilities under the Agreement. *See Id.* at Ex. A.

In Spring 2005, Wiseman was employed by United Water Services ("United Water") as a supervising engineer for wastewater plant and collection systems issues. In January 2005, United Water asked Wiseman to serve as the Program Manager for the City of Gary's "heavy cleaning" project ("the 13th Avenue Project"), pursuant to the Sewer Cleaning Management Agreement. As Program Manager, Wiseman was responsible for overseeing the cleaning of the sewers under the Sewer Cleaning Management Agreement, which also included monitoring the work of the cleaning contractor, reviewing all of the videotapes taken of the sewers, assessing and identifying any serious problems with the sewers, and advising GSD in the event that more serious issues were raised by the examination. After conducting the required examination, Wiseman concluded that the sewers were

severely deteriorated and appeared to be getting worse.

After Wiseman alerted GSD as to the problem with the sewers' condition, GSD asked for a brief report and cost estimate for the project, which was provided. Given that the O&M contract permitted for "additional services," such as design engineer services, the parties proceeded on that basis. Instead of executing a separate "Additional Services Form" as required by the O&M contract, the parties elected to proceed under the terms of the Sewer Cleaning Management Agreement, as applicable.

After receiving GSD's approval to move forward, and agreeing on a contractual basis for services, Wiseman and the technical personnel prepared project plans, specifications, drawings, and contract documents that included general conditions, supplemental conditions and instructions to bidders. Wiseman and the technical personnel sent letters to the local utility companies, requesting locations of their underground utilities, but received little or no information in response. GSD only permitted two weeks for the design phase of the project to be completed. Wiseman brought his concerns regarding the permitted time frame and unavailability of the underground utilities to GSD's attention, but GSD's counsel advised Wiseman that the work should proceed and that the responsibility for locating the underground utilities should be assigned to the successful bidding contractor. GSD's contract compliance officer, Greeley and Hansen, L.L.C., also instructed Wiseman to include general construction notes in the contractor bid package, which assigned the responsibility for locating underground utilities to the successful bidding contractor. Based on GSD's and the contract compliance officer's suggestions, WREP added construction notes which assigned the responsibility for locating underground utilities to the successful bidding contractor.

With the added notes and further amendments to the bid documents, the 13th Avenue Project was advertised for public bid and, on June 20, 2005, WREP recommended to GSD that Hasse be

selected for the project. GSD agreed and issued a Notice to Proceed with the Project on July 14, 2005. Hasse began work on approximately July 22, 2005.

Shortly after work on the 13th Avenue Project commenced, Wiseman began receiving reports from his field representatives and Hasse that there were utility conflicts with the Project. These reports indicated that water company and phone company facilities were not located where originally identified. Wiseman later conducted a personal inspection during which he witnessed the utility locations. Wiseman documented the reports that he received and summarized these reports in the Minutes for the Bi-Weekly Progress Meetings. Eventually, a Special Progress Meeting was held to discuss this issue, resulting in an agreement to halt work on the Project pending completion of determination of the utility company relocates.

On February 14, 2006, a project "re-start" meeting was held, although work did not resume at or near that time.

On March 9, 2006, Wiseman received a letter from Hasse, which included a Change Order #2, that claimed additional costs associated with the delays caused by the failure to locate utilities. On April 5, 2006, Wiseman sent a rejection letter to Hasse. Hasse then sent another letter on April 24, 2006, appealing the rejection of the Change Order #2 and requesting a meeting with GSD to discuss the claim.

According to the Third-Party Defendants, a meeting between Greeley and Hansen, L.L.C., Hasse, and WREP was held on May 17, 2006, which resulted in an agreement between Hasse and Wiseman to continue discussions on a reduction from the original amount of money claimed in the Change Order #2. Hasse sent Wiseman a letter on June 1, 2006, setting forth its revised claim, which Wiseman passed along to GSD, with WREP's and the compliance officer's recommendation. Wiseman was subsequently advised in a meeting with GSD that the revised Change Order #2 would

7

not be approved out of concern of setting precedent for recovery of costs related to utility or contractor error. Wiseman advised Hasse of the rejection and this suit followed thereafter. GSD later filed a Third-Party Complaint against the Third-Party Defendants.

**SUMMARY JUDGMENT STANDARD**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party

is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *See id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *See Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e)(2); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) establishes that the opposing party's "response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

## ANALYSIS

### A. Third-Party Defendant Wiseman's Entitlement to Summary Judgment

The Third-Party Defendants argue that summary judgment should be granted in favor of Third-Party Defendant Wiseman because he is not a party to the Sewer Cleaning Management Agreement, alleged to have been breached.[2] In particular, the Third-Party Defendants argue that although Wiseman signed the Sewer Cleaning Management Agreement, he did so only as GSD's designated representative and his signature does not represent a personal undertaking.

On the signature page of the Sewer Cleaning Management Agreement, Wiseman's signature line states "Designated Representative (paragraph 6.02A) . . . Alan C. Wiseman." Third-Party Defs.' Mot. Summ. J. Ex. G.

Under Indiana law, when an agent signs a contract on behalf of a disclosed principal, he is not personally bound by the contract unless otherwise indicated. *Carlson Wagonlit Travel, Inc., v. Moss*, 788 N.E.2d 501, 503 (Ind. Ct. App. 2003). Unless otherwise agreed, the agent does not become a party to the contract. *Owner-Operators Independent Drivers Ass'n., Inc., v. Mayflower Transit, Inc.,* Nos. 1:98-cv-0457-SEB-VSS, 1:98-cv-0458-SEB-VSS, 2006 WL 1794751, at *6 (S.D. Ind. June 27, 2006) (citing Restatement (Second) of Agency § 320). As a nonparty to the contract, the agent cannot be held liable for its breach. *See DiMizio v. Romo*, 756 N.E.2d 1018, 1021 (Ind. Ct. App. 2001) (stating that "[a] person typically cannot be held liable for breach of contract unless it is shown that she was a party to the contract.").

In its amended response brief, GSD contends that the Third-Party Defendants were retained to provide engineering services for the 13th Avenue Project and provide oversight construction and

---

[2] The only agreement which Wiseman signed is the Sewer Cleaning Management Agreement.

rehabilitation work. GSD argues that Wiseman is not entitled to summary judgment because he signed the Sewer Cleaning Management Agreement, has been employed by United Water as an engineer for fourteen years, and served as the supervising engineer for the wastewater plant and collection system. However, the record supports that Wiseman only signed the Sewer Cleaning Management Agreement on behalf of GSD, as its designated representative pursuant to paragraph 6.02A of the Agreement. Paragraph 6.02A provides that "[GSD] shall designate a specific individual *to act as [GSD]'s representative* with respect to the services to be performed or furnished by WREP and responsibilities of [GSD] under this Agreement." Third-Party Defs.' Mot. Summ. J. Ex. G at 6 (emphasis added). GSD has failed to demonstrate how this provision makes Wiseman's signature a personal undertaking or agreement to be liable for WREP's responsibilities under the Agreement. Rather, paragraph 6.02A's language explicitly provides that the designated individual (here, Wiseman) will act as GSD's representative, and does not imply that the representative will be personally bound by the contract. Accordingly, having signed the Sewer Cleaning Management Agreement solely in his capacity as GSD's designated representative–an agent for a disclosed principal–Wiseman is not personally bound by the Agreement, is not a party to it, and cannot be sued for its breach by WREP or United Water. *See Mayflower Transit, Inc.,* 2006 WL 1794751, at *6; *Carlson Wagonlit Travel, Inc.*, 788 N.E.2d at 503; *DiMizio*, 756 N.E.2d at 1021.

Further, GSD's suggestion that Wiseman may be a party to the Sewer Cleaning Management Agreement by virtue of his employment with United Water is incorrect and unsupported by law. As discussed, Wiseman signed the Agreement as an agent solely on GSD's behalf. There is no representation in the Sewer Cleaning Management Agreement that Wiseman signed it on WREP's behalf, or agreed to undertake WREP's responsibilities under the contract. In its amended response brief, GSD fails to cite any law in support of its argument that mere employment with WREP or

11

United Water makes Wiseman liable for an alleged breach of the contract entered into by WREP and GSD, and this Court is unable to find any law in support of GSD's position. GSD appears to be asking this Court to adopt a rule that would allow it to sue its own, nonparty, representative for the alleged breach of a third party. With no legal support for GSD's position, the Court declines to do so.

Accordingly, no genuine issue of material fact exists as to whether Wiseman is a party to the Sewer Cleaning Management Agreement and summary judgment must be granted as to all claims against Third-Party Defendant Wiseman.[3]

**B. Third-Party Defendant United Water's Entitlement to Summary Judgment**

The Third-Party Defendants argue that summary judgment should be granted in favor of United Water because it is a trade or brand name and not a legal entity amenable to suit.[4] In support of this argument, the Third-Party Defendants rely on an affidavit from WREP's Senior Corporate Paralegal, providing that there "is no separate corporate or partnership entity known as 'United Water' and, instead, as used by WREP, the same is merely a trade name used in the water industry." Third-Party Defs.' Mot. Summ. J. Ex. K at ¶ 3.

In response, GSD argues that United Water and WREP are considered the same entity. In support, GSD relies on Wiseman's September 10, 2008 deposition testimony, during which he testified that WREP and United Water have been treated as the same entity, although he also testified that United Water was just a brand name.

However, for the reasons set forth below, the Court need not resolve this issue.

---

[3] The Court notes that in its Amended Reply brief, the Third-Party Defendants request that the Court award sanctions for GSD's alleged baseless joinder of Wiseman in this matter. However, the Court declines to do so as the Third-Party Defendants raised this argument for the first time in their reply brief and have failed to articulate any analysis as to the appropriateness of sanctions in this matter.

[4] The entity known as United Water Services, Inc., signed only the O&M contract.

## C. Breach of Contract Claims

The Third-Party Defendants argue that WREP is entitled to summary judgment because, based on the deposition testimony of GSD's designated witness pursuant to Federal Rule of Civil Procedure 30(b)(6), there is no factual basis for the breach of contract claims. In its amended response brief, GSD argues that the Third-Party Defendants failed to oversee Hasse during construction and failed to provide the services required by their contract for the 13th Avenue Project.

While parties are bound by the testimony given by their designated representative during a Rule 30(b)(6) deposition, such testimony is not a judicial admission that ultimately decides an issue. *Indus. Hard Chrome, LTD. v. Hetran, Inc.*, 92 F. Supp. 2d 786, 791 (N.D. Ill. 2000). Rather, the testimony given at the deposition is evidence, like any other deposition testimony, that can be contradicted. *Id.*

On August 27, 2008, Jay Niec, an employee of Greeley and Hansen, L.L.C. appeared as a designated witness on GSD's behalf, pursuant to a Notice of Deposition under Federal Rule of Civil Procedure 30(b)(6). No one else appeared to respond to questions directed to GSD.

In its amended response brief, GSD argues that the Third-Party Defendants failed to inspect and supervise Hasse during the construction of the 13th Avenue Project, failed to provide GSD with the services required by their contracts, and that the Third-Party Defendants' alleged failure to properly oversee the project resulted in Hasse filing for Change Order #2, from which the underlying monetary claim arose. The Court analyzes each argument in turn.

First, in support of its allegation that the Third-Party Defendants failed to inspect and supervise Hasse, GSD relies on Mr. Niec's testimony. The cited testimony addressed an allegation in the Amended Third-Party Complaint that the Third-Party Defendants negligently and/or willfully

and wantonly failed to inspect and oversee the progress and construction on the 13th Avenue Project. Although Mr. Niec testified that, generally, he believed that the Third-Party Defendants failed to inspect and oversee Hasse, he further stated that there were no facts supporting that the alleged failure to inspect and oversee was willful on their part. GSD has failed to present any evidence contradicting this testimony. Given that GSD's Amended Third-Party Complaint alleges that the Third-Party Defendants negligently and/or willfully and wantonly failed to properly inspect or oversee Hasse, and no facts support a willful (and wanton) alleged failure, the only possibility remaining is that the alleged failure was done negligently. However, pursuant to this Court's May 23, 2008 Order, all negligence claims against the Third-Party Defendants have been dismissed with prejudice. Accordingly, GSD is foreclosed from arguing that the Third-Party Defendants negligently failed to inspect or oversee Hasse. Therefore, no genuine issue of material fact exists as to whether the Third-Party Defendants failed to inspect or supervise/oversee Hasse.

Next, in support of its allegations that the Third-Party Defendants failed to provide services required by their contracts, GSD relies on Mr. Niec's testimony in discussing the allegations of paragraph 14 of the Amended Third-Party Complaint. In the cited deposition testimony, Mr. Niec testified, generally, that as GSD's representative, he agreed with the allegations in paragraph 14 that the Third-Party Defendants failed to provide the services required under their consulting agreements. Mr. Niec later testified that the contract alleged to have been breached in paragraph 14 of the Amended Third-Party Complaint is the Sewer Cleaning Management Agreement. In particular, Mr. Niec testified that paragraphs 9 through 19 of WREP's Responsibilities under the Sewer Cleaning Management Agreement are the provisions alleged by the Amended Third-Party Complaint to have been breached. While Mr. Niec initially alleged that the Third-Party Defendants breached the Agreement by failing to provide services required thereunder, when evaluating paragraphs 9 through

19, paragraph by paragraph, Mr. Niec testified that the particular paragraphs either had not been breached at all (paragraphs 9, 10(a), 10(c), 12, 15), were not applicable (paragraphs 11, 17, 19), he did not know if there was a breach (10(b), 10(d), 13, 14), or that they were partially complied with and he did not know if the remaining obligations in those paragraphs were breached (paragraphs 16, 18). Further, Mr. Niec testified that he was unaware of any violations by the Third-Party Defendants of the O&M contract.

In its amended response, GSD has ignored this entire line of testimony. GSD has failed to contradict, or even address, Mr. Niec's testimony as its sole designated representative. GSD has not offered any testimony or evidence that supports its claim that the Third-Party Defendants failed to provide services required under their contracts. Instead, GSD merely relies on conclusory allegations that are contrary to the record in this case. Conclusory allegations not supported by the record are not enough to withstand summary judgment. *Basith v. Cook County*, 241 F.3d 919, 928 (7th Cir. 2001). Accordingly, GSD has failed to raise a genuine issue of material fact regarding the Third-Party Defendants' alleged failure to provide services required by their contracts.

Further, with regard to GSD's allegations in paragraph 14 of its Amended Third-Party Complaint that the Third-Party Defendants made material misrepresentations, Mr. Niec testified that GSD alleged that the Third-Party Defendants made misrepresentations by failing to have construction notes for particular days, failing to test manholes in the sewers, and removing too much pavement. However, Mr. Niec testified that he could not tie the alleged misrepresentations in the failure to maintain construction notes to any damages accrued to GSD. Further, Mr. Niec testified that the failure to test manholes and the removal of too much pavement had nothing to do with the delay of the Project and failure to locate utilities, which lead to the underlying monetary claim by Hasse. GSD has failed to address this issue in its amended response brief and this argument is

waived. *See Palmer v. Marion County,* 327 F.3d 588, 597 (7th Cir. 2003) (holding that claims not addressed in a summary judgment opposition brief are deemed abandoned); *Laborers Int'l Union of N. Amer. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (stating that arguments not presented to the district court in response to summary judgment motions are waived).

Third, GSD argues that the Third-Party Defendants' alleged failure to properly oversee the Project resulted in Hasse filing the Change Order #2 and, hence, the underlying monetary claim. In support, GSD relies on a portion of Mr. Niec's deposition testimony in which he states that the alleged breaches caused damages to GSD because of the Change Order #2, resulting in a monetary claim. But Mr. Niec also testified that the Change Order #2 arose out of the situation with the failure to locate the underground utilities.

Although GSD failed to address this matter, later in Mr. Niec's deposition testimony, he indicated that paragraph 8 of WREP's Responsibilities under the Sewer Cleaning Management Agreement[5] was not complied with. However, Mr. Niec later went on to testify that, to his knowledge, WREP complied with paragraph 8, except with regard to utilities. The Third-Party Defendants contend through supporting exhibits that the burden to locate utilities was shifted to the successful bidding contractor (Hasse). *See* Third-Party Defs.' Mot. Summ. J. Ex. L at ¶¶ 7, 9; App'x. 1. GSD fails to refute this contention and even indicates in its amended response that it is uncertain as to who had the responsibility to locate the utilities. *See* Third-Party Pls.' Am. Resp. Br. at 22 (stating, with regard to the responsibility of locating underground utilities, that the

---

[5] Paragraph 8 provides:

"[d]uring sewer cleaning, if repair or replacement is needed, conduct all necessary field inspections and investigations of existing conditions, including utilities, structures and other related systems to supplement and verify the record data available. Prepare brief and concise Field Investigation report that clearly summarizes findings of the field inspections and investigations."

Third-Party Defs.' Mot. Summ. J. Ex. G at Ex. A, Part 1, ¶ 8.

"responsibility fell squarely on *either* Hasse *or* on Hasse *and* the White River Parties."). Nonetheless, the Court need not resolve this issue here as GSD's primary contention is that the Third-Party Defendants' alleged failure to oversee the Project, and Hasse's work, resulted in Hasse filing the Change Order #2 and underlying claim. Given that the Court has already determined above that no genuine issue of material fact exists as to the Third-Party Defendants' alleged failure to oversee Hasse, summary judgment must be granted in the Third-Party Defendants' favor.[6]

## CONCLUSION

Accordingly, based on the foregoing reasons, the Court **GRANTS** the White River Parties' Motion for Summary Judgment [DE 70]. Third-Party Plaintiffs shall take nothing by their Amended Third-Party Complaint in this case against the Third-Party Defendants Alan Wiseman, United Water, and White River Environmental Partnership.

Pursuant to Federal Rule of Civil Procedure 54(b), the Court finds that there is no just reason for delay and the Court **DIRECTS** the Clerk to enter judgment in favor of Third-Party Defendants and against the Third-Party Plaintiffs.

The Jury Trial setting, the Final Pre-Trial Conference setting, and all previously established dates and deadlines in this case are hereby **VACATED**.

SO ORDERED this 10th day of February, 2009.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY

---

[6] With regard to GSD's argument that the Third-Party Defendants may be liable to it under the O&M contract's indemnification clause if GSD is liable to Hasse, because no genuine issue of material fact exists regarding the Third-Party Defendants' alleged breach of contract, the Court need not address this issue.

Likewise, with regard to GSD's request that the Court stay ruling on the Motion for Summary Judgment until the arbitration between Hasse and GSD is complete, GSD has failed to provide any argument as to the appropriateness of staying the proceedings and only raised this issue for the first time in its request for relief. Accordingly, the Court will not consider this request.

UNITED STATES DISTRICT COURT

cc: All counsel of record